UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

**Onvoy, Inc.,**

      **Plaintiff,**

v.

**Carolina Casualty Insurance Company,**

      **Defendant.**

Civil No.: 06-0165 (DSD /JJG)

REPORT AND
RECOMMENDATION

APPEARANCES

For Plaintiff:         Christopher Yetka and Amy Mason

For Defendant: Patrick Cary and Timothy Schupp

JEANNE J. GRAHAM, United States Magistrate Judge

     The above-entitled matter came on for hearing before the undersigned Magistrate Judge of the District Court on April 18, 2006, on Defendant's Motion to Dismiss With Prejudice (Doc. No. 7). The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1. Based upon the parties memoranda and arguments, and a review of the file, record and proceedings herein, the undersigned recommends Defendant's motion be granted in part and denied in part.

1

## Background

This action is principally a dispute over the scope of coverage, if any, afforded by a "claims made" Management Liability Insurance Policy ("the Policy"). Plaintiff Onvoy, Inc. ("Onvoy"), a Minnesota Corporation with its principal place of business in Minnesota, contends that an insurance policy sold and issued to Onvoy by Defendant, Carolina Casualty Insurance Company ("Carolina Casualty"), a Florida corporation with its principal place of business in Florida, provides for coverage for a criminal subpoena issued by a U.S. Attorney to Onvoy in 2003 ("the Subpoena"). Carolina Casualty has declined to recognize the Subpoena as a claim under the Policy and has thus denied it owes any coverage to Onvoy regarding the Subpoena. Onvoy disagrees.

On January 9, 2006, Onvoy filed the instant action seeking a declaration that the Policy provides coverage for the Grand Jury Subpoena and that Carolina Casualty has a duty to defend and to indemnify Onvoy for its defense costs relating to the subpoena. Onvoy's Complaint also alleges claims of breach of contract, breach of fiduciary duty and breach good faith and fair dealing against Carolina Casualty. In lieu of an Answer, Carolina Casualty brings this Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Carolina Casualty contends there is no coverage for the criminal subpoena under the purchased insurance policy, and that even if there were any such coverage, Onvoy refused any defense provided under that coverage. Carolina Casualty contends that Onvoy has incurred attorney fees and expenses relating to the Subpoena without the consent of Carolina Casualty.

**Discussion**

**I.    Motion to Dismiss Standard of Review**

Where a complaint fails to set forth a legally cognizable claim the action must be dismissed. *See* Fed.R.Civ.P. 12(b)(6). When considering a motion to dismiss, the Court must assume that all the facts alleged in the complaint are true and generally construe the complaint in the light most favorable to the plaintiff. *See e.g., Coleman v. Watt,* 40 F.3d 255, 258 (8th Cir.1994). A court, however, need not "blindly accept the legal conclusions drawn by the pleader from the facts." *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990). To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions. *Springdale Educ. Ass'n v. Springdale Sch. Dist.,* 133 F.3d 649, 651 (8th Cir.1998). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Under Rule 12(b)(6), the Court should not dismiss Onvoy's complaint for failure to state a claim "unless it appears beyond doubt that [Onvoy] can prove no set of facts in support of [its] claim that would entitle [it] to relief."*North Arkansas Medical Ctr. v. Barrett*, 962 F.2d 780, 784 (8th Cir. 1992) (quoting *Rhodes*, 416 U.S. at 236).

A motion to dismiss can be converted to a Rule 56 Motion for Summary Judgment if "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(b). However, a Court may consider some information, which is not contained within the Complaint-such as materials that are part of the public record, and materials that are necessarily embraced by the pleadings-without transforming the motion into one for summary judgment. *Porous Media Corp. v. Pall Corp.,* 186 F.3d

1077, 1079 (8th Cir.1999); *see also Enervations, Inc. v. Minnesota Mining and Manufacturing Co.,* 380 F.3d 1066, 1069 (8th Cir.2004). Accordingly, this Court has considered the Complaint and its attached exhibits, the Policy and the Subpoena, as well as four letters, dated August 5, 2003, August 7, 2003, August 20, 2003 and August 28, 2003, which are referenced by Onvoy in the Complaint and included as exhibits to Defendant's Memorandum in Support of its Motion to Dismiss. However, this Court has excluded from consideration Defendant's exhibit five (numerous emails) as these emails are not referenced in or attached to the Complaint. Accordingly, this Recommendation rests entirely upon the pleadings, materials that are part of the public record, and materials that are necessarily embraced by the pleadings, and Defendant's Motion has thus been analyzed under the framework of Rule 12(b)(6), rather than under standards applicable to summary judgment under Rule 56.

## II.    Policy Coverage of Grand Jury Subpoena Under the Policy

After examining the pleadings, the documents attached to and referenced in the Complaint and considering the parties' arguments, the Court concludes that the allegations in Onvoy's Complaint are sufficient to prevent this Court from finding "beyond a doubt" that Onvoy can prove no set of facts that entitle it to relief, with the exception of Plaintiff's claim for Breach of Fiduciary Duty. The Court will address each of Onvoy's claims in turn.

### 1.    Policy's Definition of "Claim"

As a threshold matter, the Court first considers whether the Subpoena issued to Onvoy falls within the definition of a "Claim" under the Policy. In interpreting insurance contracts, the court must ascertain and give effect to the intentions of the parties as reflected in the terms of the insurance contract. *Jenoff,*

*Inc. v. New Hampshire Ins. Co.*, 558 N.W.2d 260, 262 (Minn. 1997).  If policy language is unambiguous, there is no reason for construction, and the court must "attribute the usual and accepted meaning" to the language. *American Commerce Ins. Brokers, Inc.  Minnesota Mut. Fire & Cas. Co.*, 551 N.W.2d 224, 227-28 (Minn. 1996).

The Policy defines "Claim" as

1. a written demand for monetary or non-monetary relief, or

2. a civil, criminal, administrative or arbitration proceeding for monetary or non-monetary relief which is commenced by:

    a. service of a complaint or similar pleading; or

    b. return of an indictment (in the case of a criminal proceeding), or

    c. receipt or filing of a notice of charges, or

3. any proceeding brought by or initiated by a federal, state or local government agency.

(See Complaint, Exh. A, Clause III.A.).

Carolina Casualty contends that the question of coverage concerning the Subpoena is solely governed by Clause III.A.2. of the Policy.  Carolina Casualty contends the specificity of subsection 2.b. supercedes the more general provision of subsection 3, and makes the return of an indictment a precondition to Policy coverage for any criminal proceeding.  Because Onvoy has conceded that no indictment was ever returned against it, Carolina Casualty asserts that the criminal proceeding involving Onvoy, including the Subpoena and the associated investigation by the U.S. Attorney, is not a "Claim"

within the definition set forth in the Policy. In the absence of a Claim, Carolina Casualty contends it has no coverage obligations under the Policy regarding the Subpoena.

The Court disagrees and finds Defendant's reading of Clause III.A. to be unduly restrictive. First, the Court finds the language of Clause III.A. unambiguous. An ordinary reading of Clause III.A., taken as a whole, identifies three distinct categories of Claims covered under the Policy: (1) a written demand for relief; (2) a civil, criminal, administrative or arbitration proceeding for monetary or non-monetary relief commenced by a pleading, indictment or notice of charges; or (3) any proceeding brought or initiated by a federal state or local government agency. The drafter's (i.e., the insurer's) use of the coordinating conjunction "or" in the definition of "Claim" signifies that each subsection of Clause III.A. provides a separate and alternative definition of a "Claim" under the Policy. *See Webster's New World College Dictionary*, 1013 (4th Ed. 2002) ("or, conj. -a coordinating conjunction introducing an alternative"); *Random House Webster's Unabridged Dictionary*, 1360 (2nd ed. 2001) ("or, conj, used to connect words, phrases or clauses representing alternatives"); *The American Heritage Dictionary of English Language*, 1236 (Fourth Ed. 2000) ("or, conj., 1.a. Used to indicate an alternative"). Such a reading also comports with one of the obvious purposes of the insurance contract as a whole–to provide Onvoy with a defense when it is confronted with potential liability, including potential criminal liability. *See Cement, Sand & Gravel Co. v. Arigc. Ins. Co.*, 30 N.W.2d 341, 345 (Minn, 1947) ("words and phrases are given a meaning in accordance with the obvious purpose of the insurance contract as a whole"). Consequently, if the Subpoena from the U.S. Attorney falls within any one of the three alternative definitions

set forth in Clause III.A., Carolina Casualty's duties and obligations under the Policy regarding coverage of a "Claim" would be implicated.

In the Complaint, Onvoy alleges the Subpoena is a Claim under the Policy because it is a "proceeding brought or initiated by a federal, state or local government agency.'" Complaint at ¶ 12. The Court finds this allegation to be well-supported by the language of the Policy. The Subpoena was issued to Onvoy by the Assistant United States Attorney for the Southern District of New York, and commanded Onvoy to appear before a Grand Jury to testify and give evidence in regard to alleged violations of 18 U.S.C. §§ 1343, 2 and 371 (statutes relating to wire fraud and aiding and abetting). (*See* Complaint, Exh. B.)

> Black's Law Dictionary contains the following entry for the term "federal agency"
>
> A department or other instrumentality of the executive branch of the federal government, including a government corporation and the Government Printing Office.

*Black's Law Dictionary*, 68 (8th Ed. 2004). The United States Department of Justice was established in 1870 under the Act to Establish the Department of Justice, ch. 150, 16 Stat. 162 (1870) as "an executive department of the government of the United States." *See also* 28 U.S.C. § 501 ("The Department of Justice is an executive department of the United States at the seat of Government"). The Attorney General is the head of the Department of Justice, 28 U.S.C. § 503, and Assistant Attorneys General assist the Attorney General in the performance of his duties. *Id.* at § 506. "The Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings." *Id*. at § 515 (a).

The Court concludes that the Department of Justice is a federal agency within the ordinary definition of the term as used in Clause III.A.3. of the Policy. Moreover, the Court finds the issuance of the Subpoena and the investigation surrounding it, as they both relate to Onvoy, constitute a proceeding brought or initiated by the Department of Justice through the Attorney General. Accordingly, the Court finds the Subpoena is a "Claim" under the language set forth in Clause III.A.3. of the policy.

The Court rejects Carolina Casualty's assertion that such a finding renders subsection 2 superfluous. In today's jurisprudence, there are numerous circumstances that can give rise to criminal proceedings. An ordinary reading of subsection 2 unambiguously addresses those criminal proceedings commenced by a criminal complaint (2.a.) or by an indictment (2.b), while subsection 3 addresses and includes other types of proceedings, including criminal proceedings, such as the grand jury proceeding initiated by the U.S. Attorney in this case. While the Court agrees that the language of subsection 2 is more restrictive than the language of subsection 3, it finds that the ordinary meaning of the express language of subsection 3 clearly extends coverage under the Policy to the Department of Justice proceeding here. Had the parties intended to more narrowly limit the coverage of criminal proceedings under the Policy, the language of subsection 3 could have been more specifically set forth or eliminated entirely. The plain and ordinary language of Clause III.A. indicates the parties did not do so.[1]

---

[1] Because the Court finds the Subpoena falls within the meaning of subsection 3 of the Policy's definition of a Claim, it is unnecessary for the purposes of making a Recommendation on the instant motion to examine whether or not the Subpoena also falls under any other subsection of III.A. The Court, therefore declines to comment on the parties arguments regarding whether subpoena is within the meaning of the term "written demand" as intended in subsection 1 or within the meaning of the term "criminal proceeding" as intended in subsection 2. Nor will the Court comment upon the cases cited in the parties' arguments as they are not relevant to the Court's finding that the Subpoena falls within the meaning of subsection 3.

### 2. Duty to Defend

Having determined that the Complaint sufficiently alleges the existence of a "Claim" under the Policy, attention is turned to the question of Carolina Casualty's obligations concerning a Claim. The Policy bestows upon Carolina Casualty "the right and duty to defend any Claim to which this insurance applies, even if any allegations of the Claim are groundless, false or fraudulent." (See Complaint, Exh. A., Clause VI.B.). When considering whether the duty to defend exists, the court construes the complaint against the insured, in this case the Subpoena, liberally and compares its claims to the coverage afforded by the policy. See *Home Ins. Co. v. Nat'l Union Fire Ins. Of Pittsburgh*, 658 N.W.2d 522, 535-36 (Minn. 2003). "A duty to defend an insured arises if any part of the claim is *arguably* within the scope of the policy's coverage, and the burden is on the insurer to prove that a claim clearly falls outside the coverage. *Id.* at 529 (citing *Prahm v. Rupp Constr. Co.*, 277 N.W.2d 389, 390 (Minn. 1979)) (emphasis in original). Any ambiguity regarding coverage is resolved in favor of the insured. *Prahm*, 277 N.W.2d at 390. Once the insured comes forward with facts showing arguable coverage, or the insurer becomes independently aware of such facts, the insurer must either defend or further investigate the potential claim. *Id.*

This Court has determined that the U.S. Attorney Subpoena is arguably within the definition of a "Claim" as set forth in the Policy. Thus, the Complaint adequately alleges Carolina Casualty had a duty under the Policy to investigate and defend Onvoy's claim regarding the Subpoena. The issue that remains is whether Carolina Casualty had adequate notice of the Claim to trigger its duty to investigate and defend.

In the Complaint, Onvoy alleges that its August 5, 2003, letter to Carolina Casualty served as timely notice of the U.S. Attorney Subpoena claim as required under the Policy. (*See* Complaint at ¶ 18)

The Complaint further alleges that Carolina Casualty indicated the notice provided by Onvoy was deficient under the Policy and requested further information. (*Id.* at ¶ 19)   In addition, Onvoy alleges Carolina Casualty wrongly asserted that it did not consent to Onvoy incurring any costs of defense, which effectively left Onvoy without a defense.  (*Id.*)   The Complaint alleges Onvoy responded by providing further notice and provided all of the information requested by Carolina Casualty, and that Carolina Casualty responded by accepting Onvoy's tender but again asserted that costs incurred by Onvoy were not covered under the Policy. (*Id.* at ¶ 20-21).

Carolina Casualty asserts that even if a duty to defend was implicated under the Policy as a result of the Subpoena issued to Onvoy, its duty to defend was terminated because Onvoy refused the opportunity to have Carolina Casualty provide it with a defense.  Carolina Casualty contends the August 5, 2006, letter from Onvoy "demanded that Carolina Casualty not recognize the Subpoena as a Claim under the Policy" and indicated instead that the notice was of "circumstances which could become a claim in the future."  (*See* Defendant's Memorandum in Support of its Motion to Dismiss With Prejudice (hereinafter "Defendant's Memo") at 10).   Carolina Casualty points to the ensuing correspondence between the parties to support its contention that Onvoy demanded the Subpoena not be treated as a Claim, and the Onvoy was merely notifying its insurer in the event an actual claim requiring coverage arose in the future.

In analyzing the appropriate burdens to place on the parties regarding notice, or tender, of a claim and the ensuing duty to defend, the Minnesota Supreme Court has held that tender of defense occurs once an insured has been put on notice of a claim or suit against the insured. *Home Ins. Co. v. National Union*

*Fire Ins. of Pittsburgh*, 658 N.W.2d 522, 532 -533 (Minn. 2003).  Explaining its placement of this burden on the insurer, the Court noted

> Sound public policy does not support a rule that requires insureds to expressly request a defense in order to trigger the duty to defend. ... Once the insurer's duty to defend is triggered, it must begin defending the suit or bring a declaratory action if it believes the policy does not cover the claim. *See id.*  Forcing the insurer to take one of these two steps as soon as it receives notice of a claim helps the parties move on with the underlying suit.  Once an insurer receives notice of a suit, it is responsible for defending the insured unless the insured explicitly refuses the insurer an opportunity to defend.  *Id.*

Reviewing the Complaint and the correspondence referenced therein in a light most favorable to the Plaintiff, as the Court is required to do in considering Defendant's Motion to Dismiss, the Court finds Onvoy has pled sufficient facts that would, if proven, support its contention that it provided notice to Carolina Casualty regarding the Subpoena, and did not refuse a defense by Carolina Casualty.  Specifically, the Complaint alleges that the August 5, 2003, letter notified the insurer that on July 23, 2003, Onvoy had received a Grand Jury subpoena issued by the United States Attorney for the Southern District of New York, and that the Subpoena represented a potential Claim under the Policy.  (See, Defendant's Memo, Exh. 1).[2]  Onvoy further indicated that it was cooperating with the Department of Justice in the investigation, and advised Carolina Casualty of two law firms that Onvoy had retained for its defense of the investigation, requesting that Carolina Casualty notify Onvoy immediately if it objected to the law firms.

---

[2] The letters from Onvoy to Carolina Casualty dated August 5, 2003, August 7, 2003, August 20, 2003 and August 28, 2003, are specifically referenced in Onvoy's Complaint, but were not attached as exhibits to the Complaint.  Defendant has attached copies of these letters to its memorandum in support of its motion.  As discussed above, the Court is permitted to consider these letter in its analysis of the instant motion to dismiss without converting the motion to one for summary judgment.  *See Enervations, Inc. v. 3M Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004) (considering a contract termination letter referenced in the complaint to be part of the pleadings).

(Id.) In addition, Onvoy's stated its belief that "[a]ny amount that Onvoy expends on its initial legal fees with the aforementioned will satisfy the deductible requirements under the policy." (Id.).

According to the Complaint, through a series of subsequent letters between the parties, Carolina Casualty requested and received additional information regarding the Subpoena and the potential damages that may result therefrom, and that Carolina Casualty continued to refuse to consent to cover any costs Onvoy incurred in its defense of the Subpoena or to apply any such costs to the deductible applicable to coverage under the Policy. (See Defendant's Memo, Exh. 2-4). On August 20, 2003, Onvoy specifically rejected Carolina Casualty's conclusion that Onvoy's August 5th letter "did not constitute adequate or acceptable notice of Onvoy's potential claim for coverage and benefits" under the policy. (See Defendant's Memo, Exh. 3).

Finally, the Complaint alleges that on August 28, 2003, Carolina Casualty "accept[ed] Onvoy's tender as notice of a potential claim." (See Defendant's Memo, Exh. 4). However, Carolina Casualty reiterated that "any costs incurred by Onvoy are not covered under the Policy and **will not** be applied toward the exhaustion of any applicable deductibles." (Id.) (emphasis in original). Carolina Casualty reserved its rights, remedies and defenses to coverage under the Policy. (Id.) The letter instructed Onvoy to notify the insurer "[s]hould this matter become an actual claim" and that it would "begin our investigation into coverage under the Policy. At that time, should coverage be confirmed, Monitor will issue a coverage analysis and appoint defense counsel to defend its insured." (Id.)

Construing the allegations in the Complaint in a light most favorable to Onvoy, and resolving any doubts about the duty to defend in favor of the policy holder, the Court does not as a matter of law find

that Onvoy failed to tender notice of the Claim to Carolina Casualty, or that Onvoy expressly refused an offer of a defense of the Claim by Carolina Casualty. Instead the Court finds the allegations in the Complaint, while not overwhelming, assert sufficient facts that, if proven, would support the existence and triggering of Carolina Casualty's obligation to investigate and to defend Onvoy regarding the Subpoena issued by the U.S. Attorney. Accordingly, the Court finds the allegations in the Complaint sufficient to state a claim entitling Onvoy to relief under Count I - Declaratory Judgment (Defense and Investigation).

### 3. Duty to Indemnify

The Complaint alleges that under the terms and conditions of the Policy and applicable law, Carolina Casualty is required to indemnify Onvoy for all damages and costs arising from a claim against Onvoy as a result of any wrongful act that forms the basis of the claims made against Onvoy in connection with the Subpoena. (*See* Complaint, ¶ 40 and Exh.A, Clauses I, III.C. and III.I.). Having concluded that Onvoy has alleged facts that could lead to relief on its claims regarding the existence and triggering of a duty to defend on the part of Carolina Casualty, the Court also that Onvoy has also sufficiently alleged facts that could lead to relief under Count II - Declaratory Judgment (Indemnification) regarding Carolina Casualty's obligations to indemnify Onvoy for damages and costs arising in connection with the Subpoena.

### III. Breach of Contract and Fiduciary Duty Claims

### 1. Breach of Contract and Breach of Duty of Good Faith and Fair Dealing

The Complaint alleges that Carolina Casualty breached its contractual obligations under the Policy by failing to investigate or provide a defense to Onvoy and refusing to agree to indemnify Onvoy or to authorize Onvoy to retain its own defense counsel after failing to meet its obligation to defend Onvoy. (See

Complaint at ¶¶ 47-48) Onvoy further alleges Carolina Casualty has breached its duty of good faith and fair dealing by collecting insurance premiums from Onvoy while committing acts that are injurious to or that frustrate or interfere with Onvoy's rights to receive benefits promised in the Policy. (*See id.* at ¶¶ 58-64).

Under Minnesota law, an insurer's failure to defend under a policy obligating the insurer to do so is treated as a breach of contract. *See Home Ins. Co. v. National Union Fire Ins. of Pittsburgh*, 658 N.W.2d at 534, (citing *Domtar, Inc. v. Niagara Fire Ins. Co.*, 563 N.W.2d 724, 740 (Minn.1997). A duty of good faith and fair dealing exists where the parties are bound by a contractual relationship. *See Miller v. ACE USA,* 261 F.Supp.2d 1130, 1140 (D.Minn.2003). An insured may assert a breach of the covenant of good faith and fair dealing in conjunction with a breach of contract claim. *Id.* Based upon the findings of the Court regarding the sufficiency of Onvoy's allegations regarding Carolina Casualty's duty to defend set forth herein, and upon established Minnesota law, the Court concludes the allegations in the Complaint are sufficient to state claims for breach of contract and breach of duty of good faith and fair dealing.

### 2.     **Breach of Fiduciary Duty**

Count IV of Onvoy's Complaint alleges Carolina Casualty breached the fiduciary relationship between insured and insurer. (*See* Complaint at ¶¶ 52-57) Carolina Casualty argues that this claim does not state a cause of action recognized in Minnesota and should therefore be dismissed.

The Minnesota rule is set forth in *Short v. Dairyland Ins. Co.,* 334 N.W.2d 384 (Minn.1983). In *Short,* the Court found an insurer failed to exercise good faith in settlement negotiations with a third party to whom the insured was clearly liable, when it refused to settle within the policy limits. 334 N.W.2d at

388. Explaining the relationship and the resultant duty between the insurer and insured in such situations, the Court stated that when "the insurer contractually acquires control of the negotiations and settlement," there are often "conflicting interests on the part of the insurer. On the one hand, the insurer owes a fiduciary duty to the insured to represent his or her best interests and to defend and indemnify. On the other hand, the insurer is interested in settlement at the lowest possible figure." *Id.* at 387. The right of the insurer to control settlement negotiations, the Court concluded, "must be subordinated to the purpose of the insurance contract-to defend and indemnify the insured within the limits of the insurance contract." *Id.* The Court then explained the terms of the insurer's fiduciary duty, holding that [i]n Minnesota, a liability insurer, *having assumed control of the right of settlement of claims against its insured,* may become liable in excess of its undertaking under the terms of the policy if it fails to exercise 'good faith' in considering offers to compromise the claim for an amount within policy limits. This duty to exercise 'good faith' includes an obligation to view the situation as if there were no policy limits applicable to the claim, and to give equal consideration to the financial exposure of the insured. *Id.* at 387-88 (internal citations omitted, emphasis added).

Thus, the rule enunciated in *Short* specifies the fiduciary obligations as arising once the insurer assumes the defense of the insured. *See Short,* 334 N.W.2d at 387-88; *see also Kissoondath v. United States Fire Ins. Co.,* 620 N.W.2d 909 (Minn.Ct.App.2001). Therefore, where the insurer is not yet acting as advocate for the insured in dealing with a third party, the conflict of interest inherent in settlement negotiations and creating the fiduciary duty is not at issue. *See Miller*, 261 F.Supp.2d at 1140-1141. Onvoy cites no authority expressly providing for a fiduciary duty before this time and alleges no facts

15

suggesting that Carolina Casualty ever assumed the defense of Onvoy for the Subpoena. Accordingly, as a matter of law, Onvoy has failed to state a claim upon which relief can be granted in its breach of fiduciary duty claim, Count IV of the Complaint, and the Court recommends that Count IV be dismissed with prejudice.

## Conclusion

Having heard the arguments of counsel, and reviewed the motions, memoranda and the entire file and record herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Dismiss With Prejudice (Doc. No. 7) be:

1. **GRANTED IN PART**, only to the extent that **Count IV** be **DISMISSED WITH PREJUDICE**, and

2. **DENIED IN PART**, as it relates to **Counts I, II, III and V**.


Dated: May 12, 2006                                       s/Jeanne J. Graham
                                                          JEANNE J. GRAHAM
                                                          U.S. Magistrate Judge


Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by June 1, 2006. A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. A District Judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit. Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.